Chris M. Suffecool (SBN 024276)
Suffecool Law, PLLC
835 W. Warner Rd.
Suite 101 PMB 288
Gilbert, Arizona 85233
Tel: 602-675-9419
Email: chris@suffecoollaw.com

*Attorney for Plaintiff Samantha Francis*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Samantha Francis, an individual<br><br>Plaintiff,<br><br>vs.<br><br>Be Strong LLC, d/b/a Borderland Chevrolet GMC, a corporation<br><br>Defendant, | Case No.<br><br>**COMPLAINT** |

Plaintiff Samantha Francis, by and through undersigned counsel, files this Complaint against Defendant Be Strong, LLC d/b/a Borderland Chevrolet GMC.

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Defendant for (1) violation of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.*; and the Arizona Civil Rights Act, A.R.S. § 41-1401 *et. seq.* for employment discrimination based on sex, and retaliation for having complained of discrimination based on sex; (2) for violation of the Arizona Fair Wages and Healthy Families Act (A.R.S. § 23-371 et. seq.) for interfering with Plaintiff's right to use Earn Paid Sick Time and retaliation against her for attempting to use EPST;

1

and (3) wrongful termination in violation of the Arizona Employment Protection Act for complaining about its violation of the Fair Wages and Healthy Families Act.

2. Plaintiff was, at all relevant times, a citizen and resident of Douglas, Cochise County, Arizona.

3. Plaintiff, at all relevant times, worked for Defendant Be Strong, LLC d/b/a Borderland Chevrolet GMC ("Borderland" or "Defendant") until she was unlawfully terminated as described below.

4. At all relevant times, Plaintiff performed her job duties in at least a satisfactory manner.

5. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

6. Defendant is an automotive dealership and service center located in Douglas, Arizona.

7. Defendant employs, and at all relevant times, employed more than fifteen (15) regular employees in Douglas, Arizona.

8. Borderland is an employer within the meaning of 42 U.S.C. § 2000e(b).

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 42 U.S.C. § 2000e *et. seq.* This Court has pendent jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendant has caused events to occur in Cochise County, Arizona out of which Plaintiff's claims arise.

11. Plaintiff filed a Charge of Discrimination with the EEOC on February 13, 2024, and for which she was granted a right to sue letter, which she received on June 8, 2024.

12. This case is therefore timely brought as it has been filed within 90 days of the date of receipt of the right to sue letter.

## FACTUAL ALLEGATIONS

### Borderland's Sexual Harassment of Plaintiff

13. In early 2023, Defendant recruited Plaintiff to work for it as its Service Director, and Plaintiff began working in that position in June 2023.

14. Plaintiff performed very well as Defendant's Service Director, receiving excellent feedback from Defendant's owner, Mark Mermis, as well as multiple customers.

15. Upon starting that position, Mr. Mermis began to sexually harass Plaintiff.

16. For example, on one of Plaintiff's days off in June 2023, Mr. Mermis called Plaintiff, who was driving at the time with her fiancée and children in the car.

17. Plaintiff answered that call on speakerphone and Mr. Mermis immediately said loudly "Is this Sam with the big fat juicy pussy?"

18. Plaintiff was mortified and offended by this statement.

19. Plaintiff immediately disconnected her speaker phone and asked Mr. Mermis what he wanted, and he said he was just calling to say hello.

20. Another Borderland employee was in the car with Mr. Mermis at the time he made this statement.

21. Mr. Mermis would regularly grab Plaintiff's wrist and tell her that she needed to eat more because she looked like a "malnourished ethiopian."

22. On one occasion, on or about September 1, 2023, a Douglas Police Officer came to the facility to have his vehicle repaired and Mr. Mermis grabbed Plaintiff's arm and pulled her out of her office and told her to get her skinny, Ethiopian, hillbilly, goat smelling ass out to the floor to help the customer.

23. Plaintiff was mortified and offended by this statement.

24. A few weeks later, on or about September 25, 2023, Plaintiff was continuing to perform her job when she noticed an air hose in the facility that needed to be rolled up.

25. Plaintiff rolled up the air hose and then went to the women's restroom to wash her hands. Mr. Mermis came into the women's restroom, cornered Plaintiff so that she could not leave and asked her if her pussy hurt from rolling that hose up?

26. Plaintiff was again mortified, offended, and scared by this statement. Plaintiff sometimes cried when Mr. Mermis yelled at her, but he continued to do so anyway, even when Plaintiff would ask him "are you done?"

27. On this occasion, Plaintiff asked Mr. Mermis if he was done, and Mr. Mermis laughed and shut the door.

28. Mr. Mermis' harassment of Plaintiff continued outside of work as well.

29. Mr. Mermis, on multiple occasions, stalked Plaintiff by driving by Plaintiff's house for no legitimate reason.

30. On one occasion, when Plaintiff was off work, Mr. Mermis called Plaintiff's fiancé and asked him why Plaintiff's truck was not parked in the driveway of Plaintiff's home.

31. Upon information and belief, Borderland's co-owner Kevin Walters was aware of the harassment being perpetrated on Plaintiff by Mr. Mermis and Mr. Walters failed to take any action to stop that harassment.

32. Borderland does not have a Human Resources Department to which Plaintiff could have complained, and Mr. Mermis and Mr. Walters functioned as Defendant's de facto HR Department.

33. Because Mr. Mermis and Mr. Walters essentially functioned as Borderland's Human Resources Department, Plaintiff could not report Mr. Mermis' appalling behavior to Mr. Mermis himself or Mr. Walters out of a reasonable fear of retaliation.

**Borderland's Denial of Plaintiff's Earned Paid Sick Time**

34. In late October 2023, more than 90 days after Borderland hired Plaintiff, Plaintiff's son broke his toes and Plaintiff had to take him to the hospital early on a Friday morning that she was scheduled to work.

4

35. Plaintiff immediately informed Borderland's office manager of her need to have time off to take her son to the emergency room. The Office Manager informed Plaintiff that Mr. Mermis had instructed an employee to drive through the Emergency Room parking lot in Douglas to prove that Plaintiff was there.

36. Plaintiff also informed Mr. Mermis himself as well as two other employees at the facility.

37. Plaintiff was not in Douglas, but was instead in the nearby town of Sierra Vista due to having out-of-state Medicaid which she could only use at the Sierra Vista medical facility.

38. Upon returning to work on Monday, instead of offering Plaintiff the opportunity to use the Earn Paid Sick Time she had accrued since starting work for Borderland, which would more than cover the day off that she took to address her son's serious health condition, Borderland instead suspended Plaintiff for 3 working days without pay.

39. During Plaintiff's involuntary, unpaid 3-day suspension, Mr. Mermis continued to regularly drive by Plaintiff's house for no legitimate purpose.

40. Plaintiff then contacted the Arizona Department of Economic Security (DES) to lodge a complaint against Borderland.

41. Once the DES contacted Borderland, Mr. Walters told the DES that Plaintiff had been a no-call/no-show on Friday.

42. That statement was false, because Plaintiff had been in constant communication with Borderland's office manager throughout the day, informing the office manager of what was happening.

43. Mr. Walters further told the DES that Plaintiff had another no-call/no-show on that Saturday.

44. That statement was also false because Borderland's service department is closed on Saturdays.

45. In the middle of the following week, after her suspension had ended, Mr. Mermis brought Plaintiff into his office, threw an attorney's business card at

her and told her that if Plaintiff wanted to fight, Mr. Mermis was well protected, was running for Mayor of Douglas, and that he had already spoken to the judge.

46. Plaintiff told Mr. Mermis and Mr. Walters that she just wanted her check for the amount she was owed for EPST and her wrongful suspension, and that what Borderland had done was illegal.

47. Mr. Mermis told Plaintiff she was wrong and had no idea what she was talking about.

**Plaintiff's Complaint to Defendant and Defendant's Termination of Plaintiff**

48. Defendant's actions caused Plaintiff severe mental and emotional distress, inducing panic attacks and causing severe anxiety, among other things.

49. Due to the constant sexual harassment by Mr. Mermis and Defendant's refusal to grant Plaintiff her Earned Paid Sick Time and wrongful suspension without pay, Plaintiff decided to provide notice to Defendant that, unless those issues were acknowledged and addressed, Plaintiff could not return to work.

50. Therefore, on or about December 3, 2023, Plaintiff sent Mr. Mermis and Mr. Walters an email listing most of the sexual harassment she had endured, how inappropriate Mr. Mermis had acted with her, and how his sexual harassment and stalking had caused her to suffer panic attacks and severely eroded her mental health.

51. In that same email, Plaintiff informed Mr. Walters that he was complicit in Mr. Mermis' harassment because he knew it was happening and did nothing to address Mr. Mermis' behavior.

52. Finally, Plaintiff informed Defendant that she would be unable to return to work until the issues in her email were read, understood and addressed.

53. Instead of acknowledging, addressing, or opening a dialogue with Plaintiff's about her concerns, Defendant wrongfully interpreted Plaintiff's email as a "resignation" and terminated her employment.

54. Plaintiff did not voluntarily resign and, even if Defendant claims it did not terminate her employment, she was at the very least, in the alternative, constructively discharged.

55. Defendant terminated Plaintiff's employment immediately after she complained about Defendant's wrongful harassment and the issues relating to her appealing her suspension to the DES due to Defendant's wrongful denial of her right to use Earn Paid Sick Time.

## FIRST CLAIM FOR RELIEF

### Violation of Title VII of the Civil Rights Act of 1964 – Hostile Work Environment

56. Plaintiff incorporates by reference the allegations in the previous Paragraphs.

57. Plaintiff was subject to a hostile work environment while working for Defendant.

58. Mark Mermis repeatedly subjected Plaintiff to verbal and physical conduct of a sexual nature, including referring to her in derogatory terms, physically grabbing her, stalking her, and making inappropriate comments about her body.

59. Plaintiff found Mr. Mermis' conduct to be unwelcome, and she told Mr. Mermis and Mr. Walters that she found it so.

60. Mark Mermis' harassment of Plaintiff was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

61. A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

## SECOND CLAIM FOR RELIEF

### Violation of Title VII of the Civil Rights Act of 1964 - Retaliation

62. Plaintiff incorporates by reference the allegations in the previous Paragraphs.

63. Plaintiff informed Defendant that she was suffering sexual harassment

by Mr. Mermis and asked that Mr. Mermis change his behavior.

64. Instead of addressing Plaintiff's concerns, Defendant terminated Plaintiff's employment due to her complaints about Mr. Mermis' sexual harassment.

65. As a result of Defendant's unlawful adverse employment actions, Plaintiff has suffered lost wages in an amount to be proven at trial.

66. As a result of Defendant's unlawful adverse employment actions, Plaintiff will continue to suffer lost wages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**Violation of the Arizona Civil Rights Act – A.R.S. § 41-1401 *et. seq.* – Hostile Work Environment**

67. Plaintiff incorporates by reference the allegations in the previous Paragraphs.

68. Plaintiff was subject to a hostile work environment while working for Defendant.

69. Mark Mermis repeatedly subject Plaintiff to verbal and physical conduct of a sexual nature, including referring to her in derogatory terms, physically grabbing her, stalking her, and making inappropriate comments about her body.

70. Plaintiff found Mr. Mermis' conduct to be unwelcome, and she told Mr. Mermis and Mr. Walters that she found it so.

71. Mark Mermis' harassment of Plaintiff was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

72. A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

### FOURTH CLAIM FOR RELIEF

**Violation of the Arizona Civil Rights Act – A.R.S. § 41-1401 *et. seq.* – Retaliation**

73. Plaintiff incorporates by reference the allegations in the previous Paragraphs.

74. Plaintiff informed Defendant that she was suffering sexual harassment

by Mr. Mermis and asked that Mr. Mermis change his behavior.

75. Instead of addressing Plaintiff's concerns, Defendant terminated Plaintiff's employment due to her complaints about Mr. Mermis' sexual harassment.

76. As a result of Defendant's unlawful adverse employment actions, Plaintiff has suffered lost wages in an amount to be proven at trial.

77. As a result of Defendant's unlawful adverse employment actions, Plaintiff will continue to suffer lost wages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF

**Violation of the Arizona Fair Wages and Healthy Families Act – A.R.S. § 23-371 *et. seq.* – Interference**

78. Plaintiff incorporates by reference the allegations in the previous paragraphs.

79. Defendant is an employer subject to the Arizona Fair Wages and Healthy Families Act because it is an Arizona employer with one or more employees.

80. Plaintiff was eligible to receive, earn, and use at least 8 hours of paid sick time because she had worked more than 240 hours for Defendant when she took time off to address her child's health condition, and had been employed by Defendant for more than 90 days at the time she needed to use Earned Paid Sick Time.

81. Plaintiff sought to use EPST for a covered reason – her child's serious health condition, and gave Defendant as much notice as possible given the circumstances.

82. Defendant refused to allow Plaintiff to use EPST and deemed her absence from work a no-call/no-show and refused to pay her for that day.

83. Defendant interfered with Plaintiff's right to EPST by failing to pay her for her lawful use of EPST.

84. Plaintiff has been damaged by Defendant's interference with her use of EPST.

9

## SIXTH CLAIM FOR RELIEF

### Violation of the Arizona Fair Wages and Healthy Families Act – A.R.S. § 23-371 *et. seq.* – Retaliation

85. Plaintiff incorporates by reference the allegations in the previous Paragraphs.

86. Defendant is an employer subject to the Arizona Fair Wages and Healthy Families Act because it is an Arizona employer with one or more employees.

87. Plaintiff was eligible to receive, earn, and use at least 8 hours of paid sick time because she had worked more than 240 hours for Defendant when she took time off to address her child's health condition, and had been employed by Defendant for more than 90 days at the time she needed to use Earned Paid Sick Time.

88. Plaintiff sought to use EPST for a covered reason – her child's serious health condition, and gave Defendant as much notice as possible given the circumstances.

89. Defendant refused to allow Plaintiff to use EPST and deemed her absence from work a no-call/no-show and refused to pay her for that day.

90. Defendant denied Plaintiff's right to use EPST and instead of paying her for her time off, suspended her for three days without compensation.

91. That suspension was in retaliation for Plaintiff's attempt to exercise her right to use EPST.

92. After Plaintiff complained to Defendant about this failure, and after she filed a complaint with the Arizona Department of Economic Security about this failure, Defendant terminated her employment.

93. Defendant's termination of Plaintiff was in retaliation for her attempting to exercise her rights to use EPST, her attempts to legally enforce that right, and her complaining to Defendant about its interference with those rights.

94. Defendant's termination of Plaintiff's employment was in bad faith, punitive, and without justification.

95. Defendant's retaliation against Plaintiff caused her to suffer damages.

96. Because Defendant retaliated against Plaintiff within 90 days of her attempt to exercise her rights to EPST, her legal complaint to DES, and her complaint to Defendant, a presumption of retaliation attaches, see A.R.S. § 23-364 and Plaintiff is entitled to a minimum penalty of $150 per day until legal judgment is final.

## SEVENTH CLAIM FOR RELIEF

### Violation of the Arizona Employment Protection Act – A.R.S. § 23-1501 *et. seq.* – Retaliation

97. Plaintiff incorporates by reference the allegations in the previous Paragraphs.

98. Plaintiff complained to Defendant that Mr. Mermis was sexually harassing her.

99. Plaintiff complained to Defendant about their interference with her right to use EPST and retaliatory suspension.

100. Plaintiff thereby reasonably disclosed to Defendant that Defendant was violating the laws of the State of Arizona.

101. Shortly after Plaintiff complained to Defendant that Defendant was sexually harassing her and had interfered with and retaliated against her for attempting to use EPST, Defendant terminated Plaintiff's employment.

102. Defendant's termination of Plaintiff's employment was not legitimate and was because of her complaints about Defendant's sexual harassment and interference with her right to use EPST.

103. Defendant's termination of Plaintiff was in bad faith, punitive, and without justification.

104. Plaintiff was damaged by Defendant's wrongful, retaliatory termination of her employment.

## DEMAND FOR TRIAL BY JURY

105. Plaintiff demands a trial by jury.

**RELIEF REQUESTED**

106. Based on the foregoing, Plaintiff requests judgment against Defendant and the following relief:

    a. Compensatory damages;
    b. Punitive damages;
    c. Statutory damages under the Arizona Fair Wages and Healthy Families Act;
    d. Reasonable attorneys' fees and costs;
    e. Taxable costs pursuant to Arizona Rules of Civil Procedure, Rule 54(d)(1);
    f. Plaintiff's reasonable post-judgment interest in the maximum amount allowed by law; and
    g. Any other relief the Court deems just and proper under the circumstances.

Respectfully submitted this 12th day of July 2024.

                        Suffecool Law, PLLC

                        By: /s/ Chris M. Suffecool
                             Chris M. Suffecool
                             Attorney for Plaintiff